CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 26 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GEORGE THOMAS WYCKOFF, JR., | ) | Civil Action No. 7:09-cv-00251 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SHERIFF MCEATHRON, et al., | ) | By: Hon. James C. Turk |
| Defendants. | ) | Senior United States District Judge |

George Thomas Wyckoff, Jr., a Virginia inmate proceeding pro se, filed a civil rights complaint, pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Plaintiff names various officials of the Warren County Jail ("Jail") as defendants: Sheriff McEathron, Captain Barry, Sergeant Miley, Sergeant Partlow, and Officer Williams. Plaintiff alleges the defendants defamed him and violated his constitutional right to privacy. This matter is before the court for screening, pursuant to 28 U.S.C. § 1915A(b)(1). After reviewing plaintiff submissions, the court dismisses the complaint as frivolous.

I.

Plaintiff alleges the following facts. Plaintiff walked to the Jail kitchen on February 19, 2009, to start his shift as a trustee-kitchen worker. (Compl. 1.) Officer Williams stopped plaintiff and took him back to a cell block. Plaintiff later discovered the Jail removed him from his trustee position because Officer Williams searched plaintiff's belongings when plaintiff was not present and found a journal that contained a "bunch of thoughts." Officer Williams delivered the journal to Sergeant Miley. Plaintiff filed a grievance to Sergeant Miley, but Sergeant Partlow responded.

Sergeant Miley told plaintiff that his journal is considered contraband because it has information about Jail staff. Plaintiff believes that Jail staff now perceive him as a pervert

because of his journal entries.[1] (Id. 2.) Sergeant Miley, Sergeant Partlow, and Officer Williams allegedly showed the journal to other people and "turned a lot of people against [him]." The journal entries were disclosed within the Front Royal, Virginia, community. Plaintiff requests $500,000 for defamation and pain and suffering for "not being able to work" anywhere in Front Royal.

## II.

### A.

The court must dismiss any action or claim filed by an inmate if the court determines that the action or claim is frivolous or fails to state a claim on which relief can be granted. See 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); 42 U.S.C. § 1997e(c). The first standard includes claims based upon "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989). Although the court liberally construes pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), the court does not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). See also Gordon, 574 F.2d at 1151 (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff).

### B.

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by

---

[1]Plaintiff does not describe his journal entries.

2

the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). However, damages for defamation are not recoverable under § 1983 because a defamed person has not been deprived of any right, privilege, or immunity secured to him by the Constitution or the laws of the United States. Williams v. Gorton, 529 F.2d 668 (9th Cir. 1976); Ellingburg v. Lucas, 518 F.2d 1196, 1197 (8th Cir. 1975); Azar v. Conley, 456 F.2d 1382, 1388-1389 (6th Cir. 1972). Moreover, plaintiff's allegation of pain and suffering as a result of all the defendants' alleged acts cannot proceed because an inmate must show actual physical injury to recover damages, and plaintiff failed to make any such showing. See 42 U.S.C. § 1997e(e). Accordingly, the court dismisses plaintiff's defamation claim as frivolous.

C.

Plaintiff is also not entitled to relief regarding the search of his cell and seizure of his journal.[2] See J.P. v. Desanti, 653 F.2d 1080, 1091 (6th Cir. 1981) (holding that not all privacy rights or interests in the non-disclosure of private information implicate constitutional rights). See also Anderson v. Romero, 72 F.3d 518, 523 (7th Cir. 1995) (declining to extend constitutional right to privacy to inmate medical records); Watson v. Lowcountry Red Cross, 974 F.2d 482, 487-89, n.9 (4th Cir. 1992) (declining to extend constitutional right to privacy to

---

[2]The United States Constitution does not enumerate a fundamental privacy right. The Supreme Court has never proclaimed a "general constitutional right to privacy." Whalen v. Roe, 429 U.S. 589, 607-08 (1977) (Stewart, J., concurring) (quoting Katz v. United States, 389 U.S. 347, 350 (1967)). However, the Supreme Court has extended a constitutional right to limited "zones of privacy," including private decisions involving marriage, procreation, contraception, abortion, and child raising and education. The Supreme Court has not created a broad, fundamental privacy right that includes an inmate's personal journal, noting that the matter of general individual privacy rights is an issue that should be "left largely to the law of the individual States." Katz, 389 U.S. at 351. The court accordingly declines to exercise any supplemental jurisdiction over any state law claim. See 28 U.S.C. § 1367(c)(3).

3

medical records). Even if plaintiff had that constitutional right, inmates retain only "those [constitutional] rights that are not inconsistent with [their] status as prisoner[s] or with the legitimate penological objectives of the corrections system. . . ." Pell v. Procunier, 417 U.S. 817, 822 (1974). The Supreme Court of the United States considers a jail's security concerns paramount to the effective and safe administration of inmate custody:

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

Hudson v. Palmer, 468 U.S. 517, 527-28 (1984) (internal quotation marks and citation omitted).

Plaintiff, as a prisoner, does not have a privacy interest in his journal which was discovered in a search of his cell. Even if he had such an interest, Jail staff have a legitimate penological interest in searching plaintiff's cell to find contraband, detect security breaches, and protect him from harm from other inmates. Accordingly, the court dismisses plaintiff's claim of a privacy interest in his prison cell and possessions as frivolous.

D.

Inmates do not have a constitutional right to job opportunities while incarcerated. See, e.g., Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980). Because inmates have no independent constitutional right to a prison job, prison officials may generally terminate an inmate from his job for any reason without offending federal due process principles. Courts of Appeals consistently hold that an inmate's expectation of keeping a specific prison job, or any job, does not implicate a protected property interest. Bulger v. United States Bureau of Prisons, 65 F.3d

4

48, 50 (5th Cir. 1995). See, e.g., Coakley v. Murphy, 884 F.2d 1218, 1221 (9th Cir. 1989) (holding that inmates have no protected property interest in continuing in work-release program); Adams v. James, 784 F.2d 1077, 1079 (11th Cir. 1986) (stating that assignment to job as law clerk does not invest inmate with a property interest in continuation as such); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980) (holding that prisoner's expectation of keeping prison job does not amount to a property interest subject to due process protection). Although plaintiff complains about losing his position as a trustee-kitchen worker, he claims an infringement of a legal interest which clearly does not exist. Accordingly, the court dismisses plaintiff's complaint of losing his trustee position as frivolous.

III.

For the foregoing reasons, the court dismisses the complaint as frivolous, pursuant to 28 U.S.C. § 1915A(b)(1), and strikes the case from the active docket. The court declines to exercise supplemental jurisdiction over any state law claim, pursuant to 28 U.S.C. § 1367(c)(3).

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to the plaintiff.

ENTER: This 26th day of August, 2009.

*/s/ James C. Turk*
Senior United States District Judge